UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

NICHOLAS LIBRANDE,

    Plaintiff,

v.

OREGON DEP. OF CORRS.; WARNER CR. CORR. FACILITY; JEREMY BOUMONT; LT. MILLER; JANE DOE, *in Official and Individual Capacity*,

    Defendants.

Case No. 6:24-cv-01739-MTK

**OPINION AND ORDER**

KASUBHAI, District Judge.

    Plaintiff, an adult in custody (AIC) previously housed at the Warner Creek Correctional Facility (WCCF), filed this action pursuant to 42 U.S.C. § 1983 and alleged that Defendants exhibited deliberate indifference to his safety, retaliated against him for engaging in protected conduct, and opened legal mail addressed to Plaintiff's attorney. Defendants Beaumont and Miller[1] now move for summary judgment on grounds that Plaintiff cannot sustain his claims and

---

[1] Defendant Beaumont's name is misspelled in the caption of the Amended Complaint. Plaintiff's claims against the Oregon Department of Corrections, WCCF, and Jane Doe were dismissed in a previous Order.

1 -    OPINION AND ORDER

no genuine issue of material fact precludes summary judgment. For the reasons explained below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

On August 8, 2024, Plaintiff filed a complaint under the Prison Rape Elimination Act (PREA) alleging that another AIC at WCCF sexually harassed or assaulted him. Beaumont Decl. ¶ 5; Miller Decl. ¶ 5. The same day, Plaintiff's alleged assailant was placed in the Disciplinary Segregation Unit (DSU) pending an investigation by WCCF staff and the Oregon Department of Corrections (ODOC) Sexual Assault Response Team. *Id.* ¶ 6; Mattecheck Decl. Ex. 2.

During the investigation, Lt. Miller interviewed Plaintiff regarding his PREA complaint. Plaintiff asserts that Lt. Miller asked him what would happen "if anyone found out" about his complaint, and Plaintiff responded that "it wouldn't be good." Pl.'s Response at 2. Lt. Miller allegedly told Plaintiff that his PREA complaint would remain confidential, and Plaintiff informed Lt. Miller that another AIC had witnessed the sexual harassment. *Id.*; Pl.'s Decl. ¶ 5. Lt. Miller later interviewed the AIC identified by Plaintiff. Miller Decl. ¶ 6.

On August 16, 2024, Plaintiff filed a grievance and complained that Lt. Miller revealed confidential information about his PREA report to another AIC, presumably the AIC interviewed by Lt. Miller. Mattecheck Decl. Ex. 3 at 2. Plaintiff asserted that Lt. Miller questioned the other AIC and "told him what they were investigating," potentially placing Plaintiff in danger. *Id.* Plaintiff also complained that Lt. Miller opened a "legal letter" from Plaintiff addressed to an attorney and asked Plaintiff about the contents of the letter. *Id.* The grievance coordinator advised Plaintiff that grievances concerning PREA complaints were "outside" of the administrative grievance process and would be addressed by the PREA Compliance Manager. *Id.* Ex. 3 at 1.

2 -     OPINION AND ORDER

Another WCCF officer, Lt. McClain, received information that Plaintiff did not feel safe because AICs in his housing unit knew about his PREA complaint. McClain Decl. ¶¶ 1, 3; Pl.'s Decl. ¶ 8. Lt. McClain spoke to Plaintiff several times about the perceived threats to his safety. McClain Decl. ¶ 3. On August 19, 2024, Lt. McClain again spoke with Plaintiff, and Plaintiff reported that other AICs were giving him the "cold shoulder" and not speaking to him because of his PREA complaint. McClain Decl. ¶¶ 3-5. However, Plaintiff told Lt. McClain that he did not fear for his safety and assured Lt. McClain that he would notify WCCF staff if he felt unsafe. *Id.* ¶ 6 & Ex. 1; Pl.'s Decl. ¶ 16; Pl.'s Response at 2.

Plaintiff requested a transfer to another ODOC facility, and on or about August 21, 2024, Behavioral Health Services (BHS) staff recommend that Plaintiff be transferred to a facility with BHS and mental health services. Miller Decl. ¶¶ 11-12; Beaumont Decl. ¶ 11. Plaintiff's transfer request was sent to ODOC's Office of Population Management (OPOP). Beaumont Decl. ¶¶ 11.

On August 27, 2024, Plaintiff's assailant was transferred to the Snake River Correctional Institution (SRCI) and placed in SRCI's DSU unit, where he remained until November 2024. Beaumont Decl. ¶ 8; Mattecheck Decl. Ex. 2. Shortly afterward, the PREA investigation concluded and Plaintiff's claim was substantiated. Beaumont Decl. ¶ 9; Miller Decl. ¶ 7.

According to Defendants, OPOP determined that Plaintiff would be transferred to SRCI, a facility with BHS, and on September 6, 2024, Plaintiff was transferred to general housing at SRCI. Beaumont Decl. ¶¶ 13, 15; Mattecheck Decl. Ex. 1 at 1.

On September 9, 2024, Plaintiff called the PREA hotline and complained that he had been sent to the same institution as the AIC who harassed him and claimed he was retaliated against for filing a PREA complaint. Miller Decl. ¶ 17. Two days later, on September 11, 2024,

3 -     OPINION AND ORDER

Plaintiff was transferred to Deer Ridge Corrections Institution. Mattecheck Decl. Ex. 1 at 1; Beaumont Decl. ¶ 17.

During the five days that Plaintiff was housed at SRCI, his assailant remained in DSU and did interact with Plaintiff, as AICs in DSU cannot have contact with AICs in general housing. Mattecheck Decl. Ex. 2; Beaumont Decl. ¶ 16.

## DISCUSSION

Plaintiff alleges that Defendants failed to protect him from harm and retaliated against him by disclosing his PREA complaint to another AIC and transferring him to the same institution where his assailant was transferred. Plaintiff also alleges that Lt. Miller opened and read his legal mail outside of his presence in violation of his First Amendment rights. Defendants move for summary judgment on grounds that Plaintiff cannot sustain his claims as a matter of law and failed to exhaust his administrative remedies regarding his legal mail claim.

To prevail on their motion, Defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court

4 -    OPINION AND ORDER

"does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587 (citation and quotation marks omitted).

    A.  <u>Failure to Protect</u>

The Eighth Amendment imposes a duty on prison officials to protect AICs from violence or harm at the hands of other AICs. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). A prison official violates this duty when two requirements are met. *Id.* at 834. First, when objectively viewed, the conditions of confinement must pose "a substantial risk of serious harm" to the AIC. *Id.* Second, the official must be subjectively aware of the risk to the AIC and act with "deliberate indifference to inmate health or safety." *Id.* at 834, 839-40 (internal quotation marks omitted). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Id.* at 837; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) ("It is well settled that '[d]eliberate indifference occurs when [an] official acted or failed to act despite his knowledge of a substantial risk of serious harm.'") (citation omitted). Deliberate indifference is "something more than mere negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official's deliberate indifference may be established through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." *Id.* at 842.

Plaintiff alleges that Lt. Miller failed to protect him from threats of harm by disclosing Plaintiff's PREA complaint to another AIC, even though Plaintiff advised Lt. Miller that "it

5 -    OPINION AND ORDER

would not be good" if other AICs learned about his report. Pl.'s Response at 2. Plaintiff alleges that shortly after Lt. Miller interviewed the AIC, Plaintiff was surround by several other AICs in his housing unit who threatened to "shank" him if he did not "change" his story. Pl.'s Decl. ¶ 6. Plaintiff also alleges that another AIC reported the threats to Plaintiff's safety and that Defendants took no action in response. Id. ¶¶ 8, 10, 13-15, 17; Pl.'s Response at 2.

Lt. Miller contends that he did not disclose Plaintiff's confidential information, and Plaintiff presents no persuasive evidence that AICs in his housing unit learned about his PREA complaint through Lt. Miller's alleged disclosure. Miller Decl. ¶ 9. The fact that Plaintiff's assailant was transferred to DSU and WCCF while officials were investigating a report of assault or harassment involving Plaintiff would have made it obvious that someone reported the misconduct. Regardless, even if Lt. Miller disclosed Plaintiff's PREA complaint, it is undisputed that he did so while interviewing an AIC who reportedly witnessed the harassment and whose statement was relevant to the PREA investigation. Based on this record, Plaintiff fails to show that Lt. Miller acted with the subjective intent necessary to establish deliberate indifference.

With respect to the alleged threats of harm, Defendants concede that other AICs knew about Plaintiff's PREA complaint and that Plaintiff told others he felt unsafe. McClain Decl. ¶¶ 3-5 & Ex. 1; Miller Decl. ¶ 9. However, Defendants emphasize that Lt. McClain met with Plaintiff on more than one occasion and asked him about any threats. McClain Decl. ¶¶ 3-5 & Ex. 1; Pl.'s Decl. ¶¶ 8, 16. According to Lt. McClain, Plaintiff stated that he was not afraid for his safety and assured Lt. McClain that he would inform WCCF staff if he was in danger. McClain Decl. ¶ 6 & Ex. 1. Defendants maintain that if Plaintiff had expressed a fear of harm, WCCF officials would have moved Plaintiff to DSU as a temporary protective measure until Plaintiff could be transferred to another facility. Miller Decl. ¶ 16.

6 -     OPINION AND ORDER

Plaintiff does not dispute Lt. McClain's account and concedes that he did not tell Lt. McClain or any other WCCF official that he felt threatened or unsafe, as he was "afraid to tell [prison staff] anything 'cause of the threats and danger" from other AICs. Pl.'s Decl. ¶ 16; Pl.'s Response at 2 ("At that time, I never said anything because of fear and what was told to me by other AICs"). The record further reflects that Defendants took appropriate action after Plaintiff's PREA report by moving his assailant to DSU, investigating his allegations, and forwarding Plaintiff's transfer request to OPOP. Plaintiff does not explain what action Defendants should have taken to protect him when Plaintiff did not request protective custody or express fear for his safety, and he fails to establish deliberate indifference on this ground.

Plaintiff also fails to show that Defendants disregarded a known risk of harm by transferring him to SRCI. Plaintiff contends that Lt. Miller failed to place a conflict between Plaintiff and his assailant, which presumably would have prevented Plaintiff's transfer to SRCI. Pl.'s Response at 3-4. However, Plaintiff presents no evidence suggesting that Lt. Miller or Beaumont facilitated Plaintiff's transfer to SRCI with the knowledge that his assailant was also transferred to SRCI. Further, Plaintiff did not interact with his assailant at SRCI and it would have been impossible for them to interact in light of their housing assignments. At most, the record supports a finding of negligence arising from the failure to lodge a conflict between Plaintiff and his assailant, and negligence cannot sustain a claim for deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (stating that negligence cannot satisfy the "deliberate indifference" standard).

In sum, Plaintiff fails to present evidence to sustain a claim of deliberate indifference based on the disclosure of his PREA report or his transfer to SRCI, and summary judgment is granted on these claims.

7 -    **OPINION AND ORDER**

B. <u>Retaliation</u>

Plaintiff also alleges that Defendants transferred him to SRCI in retaliation for his PREA complaint and his grievance about their alleged failure to protect him from harm.

To sustain a viable claim of First Amendment retaliation, Plaintiff must establish five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff presents no evidence suggesting that he was transferred to SRCI because of his PREA complaint or grievances. To the contrary, it is undisputed that Plaintiff requested a transfer from WCCF, and Plaintiff's request was forwarded to OPOP after BHS staff determined that he should be transferred to an institution with appropriate mental health services. Although Plaintiff was mistakenly transferred to SRCI, Plaintiff presents no evidence that Lt. Miller or Beaumont personally participated in the decision to transfer Plaintiff to SRCI or that they harbored retaliatory animus toward Plaintiff because of his complaints. Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

C. <u>Legal Mail</u>

Plaintiff alleges that Lt. Miller violated his First Amendment rights by opening and reading a letter from Plaintiff to an attorney that discussed "Lt. Miller's actions and the fear of being seriously injured." Am. Compl. at 5. Defendants move for summary judgment on grounds that Plaintiff did not exhaust his available administrative remedies and cannot sustain a claim on the merits.

8 -    OPINION AND ORDER

Under the Prison Litigation Reform Act (PLRA), AICs must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires AICs to comply with the procedural and substantive elements of the prison administrative process before filing suit. *Woodford v. Ngo,* 548 U.S. 81, 85, 91 (2006) (stating that the PLRA exhaustion requirement requires "proper" exhaustion and compliance with "with an agency's deadlines and other critical procedural rules"); *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the plaintiff did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (explaining that the PLRA does not require exhaustion when administrative remedies are "effectively unavailable"); *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (stating that an administrative remedy must be available "as a practical matter").

On August 16, 2024, Plaintiff filed a grievance complaining that Lt. Miller disclosed his PREA complaint to another AIC and opened a "legal letter" Plaintiff sent to an attorney that was "marked legal mail." Mattecheck Decl. Ex. 3 at 2. On August 28, 2024, Plaintiff received the following response to his grievance:

> A grievance related to a claim of sexual abuse or sexual harassment is immediately subject to investigation that is outside the Department's administrative remedies process. Your allegation has been received and forwarded

9 -     OPINION AND ORDER

for investigation. At the conclusion of this investigation, you will be notified of the outcome by the PREA Compliance Manager at your institution.

***

**No further grievance response or appeal will be provided. This concludes the grievance process for this matter. Please contact your institution's PREA Compliance Manager with any questions.**

*Id.* Ex. 3 at 1 (bold in original).

Defendants argue that Plaintiff's grievance failed to comply with the ODOC rule limiting AICs to one issue per grievance. Or. Admin. R. 291-109-0210(1). Defendants maintain that Plaintiff's complaint regarding his legal mail was separate and distinct from the alleged disclosure of his PREA report and should have been submitted in a separate grievance. Because Plaintiff did not do so, Defendants argue that Plaintiff did not properly exhaust the administrative grievance process. I disagree.

Plaintiff filed a timely grievance regarding Lt. Miller's alleged opening of his legal mail, and Plaintiff was not advised that his grievance improperly raised more than one issue and he was not given an opportunity to correct and resubmit his grievance. Instead, Plaintiff was informed that his complaints fell "outside" of ODOC's administrative grievance process, that the process was "closed," and that he could not pursue an appeal. Given this response, no other administrative remedies remained available to Plaintiff regarding his legal mail complaint. Accordingly, summary judgment is denied on grounds of exhaustion.

Defendants next argue that Plaintiff cannot sustain a First Amendment claim "regarding access to the courts" based on the opening of his legal mail because he did not suffer an actual

10 -    OPINION AND ORDER

injury.² *See* Defs.' Mot. for Summ. J. at 12-13. Defendants misconstrue the nature of Plaintiff's claim. Plaintiff does not allege that Lt. Miller denied him access to the courts by opening and reading his legal mail. Instead, Plaintiff's First Amendment claim is based solely on Lt. Miller's alleged act of opening and reading confidential legal mail outside of Plaintiff's presence. *See* Pl.'s Am. Compl. at 6 (ECF No. 11) (alleging that Lt. Miller "Deliberately opened and read my Properly marked Outbound Legal Mail outside of Plaintiff's Presence"); Order dated Jan. 27, 2025 at 2 (ECF No. 12) (stating that "Plaintiff alleges that Lt. Miller deliberately opened and read outgoing mail addressed to Plaintiff's attorney" and citing *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017)). While a First Amendment claim alleging the denial of access of the courts requires a showing of actual injury "with respect to contemplated or existing litigation," *Lewis v. Casey,* 518 U.S. 343, 348 (1996), Plaintiff's First Amendment claim alleging the opening of legal mail does not.

AICs "have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017). As the Ninth Circuit explained:

> When a prisoner receives confidential legal mail that has been opened and re-sealed, he may understandably be wary of engaging in future communication about privileged legal matters. Moreover, prisoners' communications with civil attorneys often relate to lawsuits challenging the conditions of confinement in the prison or wrongful conduct of prison employees. When prison officials open legal mail, prisoners may justifiably be concerned about retaliation from the very officers the prisoner has accused of wrongdoing.

---

² Defendants also argue that Plaintiff cannot sustain a Sixth Amendment claim because the letter did not pertain to criminal matters. The Court construes Plaintiff's claim as arising under the First Amendment rather than the Sixth Amendment.

**11 -    OPINION AND ORDER**

*Id.* at 1210; *see also Nordstrom v. Ryan*, 762 F.3d 903, 909-10 (9th Cir. 2014) (allowing prison officials to read an AIC's legal mail "is highly likely to inhibit the sort of candid communications that the right to counsel and the attorney-client privilege are meant to protect"). Thus, when a plaintiff alleges "'that his right to privately confer with counsel has been chilled,'" that injury "is sufficient to state a First Amendment claim." *Hayes*, 849 F.3d at 1212 (quoting *Nordstrom*, 762 F.3d at 911 and *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Accordingly, Plaintiff need not "'show any actual injury beyond the free speech violation itself to state a constitutional claim.'" *Id.* (quoting *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008)).

To sustain this claim, Plaintiff must show that his letter was properly marked as "legal mail" and that Lt. Miller deliberately opened the letter outside of Plaintiff's presence with no justifying penological purpose. *Hayes*, 849 F.3d at 1211, 1213.

The letter in question was placed in an envelope addressed to "Law Office of Carlita Manchitto" and the word "legal" was written on front of the envelope. Pl.'s Decl. Ex. 1. In the return address of the envelope, another AIC's name and identification number were scribbled out and replaced with Plaintiff's name and identification number. *Id.* The envelope was also stamped with the following message: "Envelope is altered due to SID# being changed/damaged. Use a DOC Canteen envelope that you have purchased through canteen for mailing letters out of the institutions." *Id.* Plaintiff maintains that the letter "contained information regarding the threats and the fear [he was] going to die" and that Lt. Miller discussed the contents of the letter with him. Pl.'s Decl. ¶¶ 11-12; *see also* Pl.'s Response at 2-3.

Lt. Miller does not deny that he opened or read Plaintiff's letter or that the letter was addressed to an attorney and marked "legal." Rather, Lt. Miller states that he "had a conversation" with Plaintiff "regarding the letter he was trying to send…in an unauthorized

12 -    OPINION AND ORDER

envelope." Miller Decl. ¶ 18. Lt. Miller advised Plaintiff that the letter could not be sent in the altered envelope but could be mailed in an authorized envelope. *Id.* ¶ 19.

On this scant record, it remains a question of fact whether Lt. Miller inadvertently or deliberately opened Plaintiff's legal mail or whether Lt. Miller can assert a "legitimate penological reason" to justify opening Plaintiff's legal mail outside of his presence. *Hayes*, 849 F.3d at 1213; *see also id.* at 1218 ("An allegation that prison officials opened a prisoner's legal mail, without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.") (Bybee, J., concurring); *Hoge v. Griffith*, No. 6:20-cv-00638-JR, 2022 WL 19520016, at *4 (D. Or. Dec. 20, 2022) ("Isolated instances of inadvertent opening of legal mail outside an AIC's presence, while not to be condoned, are not actionable as constitutional violations."), *report and recommendation adopted*, 2023 WL 2327417 (D. Or. Mar. 1, 2023).

For this reason, summary judgment is denied on Plaintiff's First Amendment claim based on the opening or reading of Plaintiff's legal mail outside of his presence.

D.  Other Claims

Plaintiff's Amended Complaint also asserts conclusory claims of negligence, intentional infliction of emotional distress, and violations of his due process rights.

Plaintiff fails to allege facts suggesting that Defendants deprived him of a protected property or liberty interest to sustain a due process claim, and Plaintiff cannot pursue state law tort claims against Defendants in federal court. The sole cause of action under Oregon law for any tort of ODOC officials acting within the scope of their employment or duties, as alleged here, is an action against ODOC under the Oregon Tort Claims Act. Or. Rev. Stat. § 30.265(1). Plaintiff cannot bring suit against ODOC in this action, because it is an arm of the State and

13 -    OPINION AND ORDER

immune from suit for damages in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-100 (1984).

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 33) is DENIED with respect to Plaintiff's legal mail claim and GRANTED with respect to all remaining claims.

Within 30 days from the date of this Order, the parties shall confer and submit a status report advising how they wish to proceed in this action.

IT IS SO ORDERED.

DATED this 6th day of March 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

14 -    OPINION AND ORDER